UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

LAURA V. JETER,

              Plaintiff,

      v.

KILOLO KIJAKAZI, *Acting Commissioner of Social Security*,

              Defendant.

**MEMORANDUM & ORDER**
22-CV-07706 (HG)

**HECTOR GONZALEZ**, United States District Judge:

In this appeal brought pursuant to the Social Security Act, 42 U.S.C. § 405, Plaintiff Laura Jeter challenges the final determination of the Commissioner of Social Security (the "Commissioner") denying her application for disability insurance benefits and supplemental security income benefits. The parties have made cross-motions for a judgment on the pleadings. ECF Nos. 7, 9. For the reasons set forth below, the Court grants the Commissioner's motion and denies Plaintiff's motion.

## FACTUAL BACKGROUND

Plaintiff applied for Social Security benefits based on symptoms caused by her rheumatoid arthritis and lupus. ECF No. 7-1 at 1. To address her rheumatology issues, Plaintiff saw a specialist named Dr. Irina Litvin from March 2018 to August 2021. *Id.* at 3–9, 8–10. During that time, Plaintiff started receiving Arava, an oral medication, and later added Humira, an injection-based medication, at Dr. Litvin's suggestion. *Id.* However, Dr. Litvin had Plaintiff cease using Humira in June 2021, after she had been using it for about two-and-a-half months, because it did not appear to be improving Plaintiff's symptoms. *Id.* at 8. Although Plaintiff asked Dr. Litvin to "sign disability paperwork," Dr. Litvin provided the Social Security

Administration's Administrative Law Judge (the "ALJ") only with copies of Plaintiff's treatment notes without providing a functional assessment of the work-related tasks that Plaintiff could perform.  *See* ECF No. 6-8 at 57.

In August 2021, Plaintiff switched to a new rheumatologist, Dr. Muznay Khawaja, who had a single visit with Plaintiff before her hearing with the ALJ.  ECF No. 7-1 at 9–10, 12; ECF No. 6-8 at 142–44.  Dr. Khawaja noted that Plaintiff's use of Arava had "helped," but that her temporary addition of Humira "did not work."  ECF No. 6-8 at 142.  Dr. Khawaja provided copies of those treatment notes to the ALJ but, like Dr. Litvin, did not provide a functional assessment of the tasks Plaintiff could perform.  *Id.* at 142–48, 159.

Plaintiff also saw Dr. Ilias Almakaev as her primary care doctor, who provided the ALJ treatment records and an assessment of Plaintiff's functional capacity.  ECF No. 6-7 at 302–313; ECF No. 6-8 at 117–41.  Dr. Almakaev's assessment was provided on a checklist created by the Social Security Administration and opined that Plaintiff:  (i) could never lift any weight; (ii) could not stand, sit, or walk for more than one hour each day; and (iii) could never reach, push, pull, or handle anything with her fingers.  ECF No. 6-7 at 305–07.

Another doctor, Elon Fernandez, examined Plaintiff twice in a consulting capacity to assist the Social Security Administration with deciding Plaintiff's application for benefits, once in July 2020 and again in April 2021.  ECF No. 6-8 at 161–69.  Dr. Fernandez's assessment of Plaintiff's dexterity improved between the two visits and, during the second examination, he opined that Plaintiff had "[m]ild to moderate limitations" on "dexterity, grasping, holding, and handling objects with both hands."  *Id.* at 169.  He observed that Plaintiff was able to "zip, button, and tie, though slowly," and that she had "[g]rip strength" of "4/5."  *Id.* at 168.

Following a hearing at which Plaintiff testified, the ALJ agreed that Plaintiff had rheumatoid arthritis and lupus. ECF No. 6-2 at 18. He concluded that Plaintiff had the residual functional capacity to perform sedentary work with specific limitations described in detail in his decision. *Id.* at 20. Notably, that sedentary work included tasks that required dexterity in Plaintiff's hands and fingers; the ALJ found that Plaintiff could "occasionally push, pull, [and] operate controls," and could "frequently handle, finger, [and] feel." *Id.* In reaching this conclusion, the ALJ found the assessment provided by Plaintiff's primary care doctor to be "unpersuasive." *Id.* at 23. He also found "unpersuasive" the opinions of two other doctors who opined that Plaintiff could engage in "light work," which is more strenuous that sedentary work, based on their review of Plaintiff's medical records in connection with her application for benefits. *Id.* The ALJ found "persuasive" Dr. Fernandez's opinions about Plaintiff's functional limitations because he deemed those opinions consistent with Dr. Litvin's treatment notes describing the impact of medication on Plaintiff's symptoms. *Id.*

The ALJ concluded that Plaintiff's residual functional capacity to perform only sedentary work precluded her from returning to her prior jobs as a daycare worker and a babysitter. ECF No. 6-2 at 24. But he credited the testimony of a vocational expert that Plaintiff could work as a customer service clerk, a clerk in the food and beverage industry, or a "[f]inal [a]ssembler," and that sufficient positions existed for those jobs in the national economy. *Id.* at 24–25. The ALJ therefore concluded that Plaintiff was not disabled. *Id.* at 25.

## STANDARD OF REVIEW

When deciding an application for benefits, an ALJ must follow a five-step process, outlined in the Code of Federal Regulations, *see* 20 C.F.R. § 404.1520(a)(4)(i)–(v), to determine whether a claimant is disabled. *See Schillo v. Kijakazi*, 31 F.4th 64, 70 (2d Cir. 2022) (detailing

five-step process and associated burden-shifting).[1]  When a plaintiff challenges an ALJ's decision as unsupported by substantial evidence, as Plaintiff does here, the Court must "conduct a plenary review of the administrative record" and determine "whether the ALJ applied the correct legal standards and whether the ALJ's determination is supported by substantial evidence."  *Rucker v. Kijakazi*, 48 F.4th 86, 90–91 (2d Cir. 2022).

"The substantial evidence standard is a very deferential standard of review—even more so than the clearly erroneous standard."  *Schillo*, 31 F.4th at 74.  But the standard is "not merely hortatory:  It requires relevant evidence which would lead a reasonable mind to concur in the ALJ's factual determinations."  *Colgan v. Kijakazi*, 22 F.4th 353, 359 (2d Cir. 2022).  The Court is therefore "required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn."  *Schillo*, 31 F.4th at 74.  Once an ALJ has made findings of fact, however, the Court "can reject those facts only if a reasonable factfinder would *have to conclude otherwise.*"  *Id.* (emphasis in original).  Put another way, "[i]f evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld."  *Id.*  Although an ALJ is not required to "reconcile[]" "every conflict in [the] record," the ALJ must describe "the crucial factors in any determination . . . with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence."  *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019).

## DISCUSSION

Plaintiff contends that the ALJ erred in concluding that Plaintiff had the residual functional capacity "to perform tasks requiring manual dexterity" and that the ALJ improperly interpreted Dr. Litvin's and Dr. Khawaja's treatment records when reaching that conclusion.

---

[1]  Unless noted, case law quotations in this order accept all alterations and omit internal quotation marks, citations, and footnotes.

ECF No. 7-1 at 1, 20–23.  But Plaintiff mischaracterizes the record when she asserts that Dr. Litvin "observed a complete loss of any benefit from [Plaintiff's] medications" during visits in June and July 2021.  ECF No. 7-1 at 24.  Instead, Dr. Litvin's records reflect that Plaintiff's regimen of Arava had not completely eliminated her symptoms and that the addition of injection-based Humira had been discontinued because it showed "no added benefit" to taking Arava alone.  ECF No. 6-8 at 50–60.  Those records do not indicate that Arava had ceased to provide Plaintiff with any meaningful relief, as Plaintiff contends.  Although Plaintiff still demonstrated "continuous disease activity" during her final visit with Dr. Litvin in July 2021, Dr. Litvin recorded that Plaintiff had "no complaints" during that visit.  *Id.* at 57, 60.  Dr. Khawaja observed a month later that Plaintiff was still experiencing pain but that her use of Arava had "helped."  ECF No. 6-7 at 294.  The ALJ interpreted these records to conclude that Plaintiff's medication was providing her with meaningful relief from her symptoms.  ECF No. 6-2 at 21, 23.  Plaintiff attempts to force a contrary conclusion based on her interpretation of isolated words in those medical records:  for example, by arguing that Dr. Khawaja meant to convey that Arava had "helped" Plaintiff in the past but was no longer "*helping*" her in the present.  ECF No. 7-1 at 22 (emphasis in original); ECF No. 11 at 5.  Plaintiff's arguments cannot overturn the ALJ's judgment because even "[i]f evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld."  *Schillo*, 31 F.4th at 74.

Additionally, the ALJ was not required to conclude that Plaintiff was disabled simply because her use of Arava did not fully eliminate her arthritis symptoms.  "[D]isability requires more than mere inability to work without pain.  To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment."  *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983); *see also Prince v. Astrue*, 490 F.

5

App'x 399, 400 (2d Cir. 2013) (reiterating same standard). The ALJ's conclusion that Plaintiff's pain was being managed by her medication was supported by substantial evidence, including the medical records from Dr. Litvin described above. *Yucekus v. Comm'r Soc. Sec.*, 829 F. App'x 553, 556 (2d Cir. 2020) (holding that ALJ properly concluded that plaintiff was not disabled despite continuing to experience pain because "with medication, the pain was manageable").

In reaching his residual functional capacity assessment, the ALJ did not err in rejecting the opinions offered by Plaintiff's primary care physician, Dr. Almakaev, about the tasks Plaintiff could perform and instead crediting the opinion of Dr. Fernandez following his examinations of Plaintiff. The Social Security Administration has adopted regulations providing that, for all applications for benefits submitted after March 27, 2017, the Administration will no longer apply regulations commonly referred to as the "treating physician rule," which presumptively afforded controlling weight to a treating physician's opinion. *Schillo*, 31 F.4th at 70–71. Since the treating physician rule has now been repealed, "the agency 'will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s).'" *Loucks v. Kijakazi*, No. 21-1749-cv, 2022 WL 2189293, at *1 (2d Cir. June 17, 2022) (quoting 20 C.F.R. § 404.1520c(a)). Substantial evidence supports the ALJ's determination that Dr. Fernandez's opinions were more consistent with the treatment notes of Plaintiff's treating specialists than Dr. Almakaev's opinions were. *See Tibbles v. Comm'r Soc. Sec.*, No. 22-1127-cv, 2023 WL 3477127, at *2 (2d Cir. May 16, 2023) (affirming ALJ's assessment of plaintiff's residual functional capacity that discounted treating physician's opinions because they were "not fully supported by or consistent with the other evidence in the record," including contemporaneous "treatment notes"); *see also Peets v. Kijakazi*, No. 21-3150-cv, 2022 WL 17725391, at *1–2 (2d Cir. Dec. 16, 2022) (affirming ALJ's

decision, after repeal of treating physician rule, to afford more weight to consultant who examined plaintiff once than to plaintiff's treating physician).

The ALJ also did not fail properly to weigh Plaintiff's testimony about her subjective assessment of her pain. The ALJ concluded that Plaintiff's arthritis and lupus could conceivably cause the pain and other types of symptoms that she testified about at the administrative hearing. ECF No. 6-2 at 21. But he further concluded that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.*

"[A]n ALJ 'is not required to accept the claimant's subjective complaints without question.'" *Tibbles*, 2023 WL 3477127, at *2 (quoting *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010)). Instead, "the ALJ must consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record." *Wetzel v. Berryhill*, 783 F. App'x 44, 47 (2d Cir. 2019). "Generally, it is for the ALJ, and not the reviewing court, to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Corbiere v. Berryhill*, 760 F. App'x 54, 58 (2d Cir. 2019). Accordingly, "where substantial evidence supports it, an ALJ's credibility determination is generally entitled to deference on appeal." *Meyer v. Comm'r Soc. Sec.*, 794 F. App'x 23, 26 (2d Cir. 2019). After giving the ALJ this level of deference, the Court finds that he did not err in deciding that Plaintiff had the residual functional capacity to perform sedentary work that required manual dexterity, despite Plaintiff's subjective description of her symptoms. *Dianne H. v. Kijakazi*, No. 21-cv-6235, 2022 WL 17251583, at *6–7 (S.D.N.Y. Nov. 28, 2022) (holding that ALJ adequately accounted for plaintiff's subjective description of her pain by adopting a residual functional capacity assessment that limited her to "a reduced range of sedentary work").

7

Finally, Plaintiff challenges the ALJ's reliance on the testimony of a vocational expert to conclude that sufficient jobs that Plaintiff could perform existed in the national economy. ECF No. 7-1 at 25. However, Plaintiff's challenge is based solely on her argument that the ALJ's hypothetical questions "posed to the [v]ocational [e]xpert were predicated upon the ALJ's faulty residual functional capacity assessment." *Id.* The Court has already rejected Plaintiff's arguments that the ALJ erred in reaching his residual functional capacity assessment, and the hypothetical questions that the ALJ asked the vocational expert were, as Plaintiff concedes, consistent with that residual functional capacity assessment. *Compare* ECF No. 6-2 at 42–43 (transcript of ALJ asking hypothetical), *with id.* at 20 (ALJ's decision describing Plaintiff's residual functional capacity).

"[A]n ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as there is substantial record evidence to support the assumptions upon which the vocational expert based his opinion," and the ALJ's hypothetical question "accurately reflect[ed] the limitations and capabilities of the claimant involved." *Glessing v. Comm'r Soc. Sec.*, No. 21-1192-cv, 2022 WL 457243, at *2 (2d Cir. Feb. 15, 2022); *see also McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) (explaining same standard). The ALJ's reliance on the vocational expert's response to his hypothetical question was proper because the hypothetical question "was based on the ALJ's [residual functional capacity] determination," which was, in turn, "supported by substantial evidence" for the reasons explained above. *Glessing*, 2022 WL 457243, at *2.

Any remaining arguments raised by Plaintiff are without merit. In considering the record as a whole, it is clear that the ALJ's opinion is amply supported by substantial evidence. *See Zacharopoulos v. Saul*, 516 F. Supp. 3d 211, 220 (E.D.N.Y. 2021) (explaining that "the relevant question is not whether substantial evidence supports plaintiff's position, but whether substantial

8

evidence supports *the ALJ's decision*" (emphasis in original)).  The Court must therefore affirm the decision of the Commissioner.

## CONCLUSION

For the reasons set forth above, the Court GRANTS the Commissioner's motion for judgment on the pleadings, *see* ECF No. 9, and DENIES Plaintiff's motion for judgment on the pleadings, *see* ECF No. 7.  The Clerk of Court is respectfully directed to enter judgment and to close this case.

SO ORDERED.

                                                      */s/ Hector Gonzalez*
                                                     HECTOR GONZALEZ
                                                     United States District Judge

Dated: Brooklyn, New York
         December 11, 2023